CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 AUG 25 PM 1: 12

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KARL WESLEY KASINER, | § | |
| Petitioner, | § § § | |
| v. | § | 2:15-CV-0254 |
| UNITED STATES OF AMERICA, | § § § | |
| Respondent. | § § | |

## REPORT AND RECOMMENDATION
## TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Defendant KARL WESLEY KASINER has filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. The undersigned finds defendant's claims are without merit and recommends the Motion to Vacate be DENIED.

In his motion, KASINER claims ineffective assistance of trial counsel in failing to file a Motion to Suppress. In order to prevail on an ineffective assistance of counsel claim for trial counsel's failure to file a motion to suppress, the burden is on KASINER to show the Motion to Suppress would have been successful if filed. KASINER did not meet this burden. KASINER has failed to show trial counsel's strategic consideration of whether to file a Motion to Suppress was deficient. KASINER also failed to show the outcome of his case would be different if a Motion to Suppress had been filed.

## I.
## FACTUAL AND PROCEDURAL HISTORY

On May 23, 2014, defendant was charged by indictment with the felony offenses of one count of possession with intent to distribute 500 grams or more of methamphetamine, one count

of possession with intent to distribute 500 grams or more of cocaine, and one count of possession of a firearm by a convicted felon. *United States v. Kasiner*, No. 2:14-CR-0040. On July 16, 2014, a superseding information was filed charging the defendant with possession of a firearm in furtherance of a drug trafficking crime. *Id.*

On July 17, 2014, defendant pled guilty to the superseding information and the charge of possession of a firearm in furtherance of a drug trafficking crime. A signed Factual Resume was submitted in connection with his plea. The Factual Resume stated:

> On April 23, 2014, Potter County Deputy K.C. Simpson was working routine patrol on Interstate 40 in Potter County, Texas. At approximately 1:00 p.m., Deputy Simpson stopped a 2013 Hyundai Elantra for the traffic offense of improper lane change. Upon making contact with the driver of the vehicle, who was later identified as Karl Wesley Kasiner (Kasiner), Deputy Simpson noticed that Kasiner appeared to [sic] very nervous for being stopped for a traffic violation. Kasiner also identified himself to the DEA agent by using his brother's name during the traffic stop. Deputy Simpson issued Kasiner a warning for improper lane change and returned to Kasiner the rental agreement for the car. Deputy Simpson then asked Kasiner for verbal consent to search his vehicle. Kasiner refused consent to a search. Another Potter County Deputy Sheriff was on the scene and was assisting Deputy Simpson. This second Deputy Sheriff had a dog trained to detect illegal drugs. The dog then checked the outside of Kasiner's vehicle. The dog alerted to Kasiner's vehicle in the fashion the dog is trained to do when it smells illegal drugs.
>
> The Deputies then searched Kasiner's vehicle and located a small sentry safe in the trunk, a sealed bag full of marihuana, and pipes often used to smoke methamphetamine. The Deputies also found a small amount of methamphetamine near the driver's seat. The Deputies then arrested Kasiner. The Deputies continued the search and found a pistol, namely a Hi-Point, Model C9, .9 millimeter pistol, serial number P1649191, behind the center console on the floor board. The firearm was in a holster and was loaded with a magazine that contained three rounds.
>
> As the Deputies were getting ready to take the car to the maintenance shop for a more detailed search, Kasiner told the Deputies that the key to [sic] safe was in the center console of the car and there were "two and half pounds of dope in the safe." After arriving at the maintenance shop, Deputy Simpson opened the safe with the key and found three bundles inside the safe. Deputy Simpson removed the bundles and upon opening them, discovered a white crystal substance that later field tested positive for the presence of methamphetamine. These bundles of methamphetamine had a gross weight of approximately 1304 grams.

DEA Task Force Officer Marcos Fabela arrived to assist in the investigation and advised Kasiner of his Miranda rights. Kasiner agreed to answer questions. Kasiner said he was the owner of the drugs and he was taking the drugs to Eufaula, Oklahoma where he intended to sell them.

Subsequent testing by the DEA South Central Laboratory confirmed that the substance in the three bundles found in the safe contained methamphetamine, a Schedule II controlled substance, with an approximate weight of 1,227 grams, and a methamphetamine purity level of approximately 81.2 percent.

Kasiner admits that he knowingly possessed the firearm described in the superseding information in furtherance of the drug trafficking crime of possession with intent to distribute methamphetamine.

Pursuant to a Plea Agreement entered the same day, KASINER stipulated to the truthfulness and accuracy of the Factual Resume, swore the facts in the factual resume were true and correct and acknowledged the Factual Resume would be submitted as evidence. He averred his plea of guilty was freely and voluntarily made, and stated that after thoroughly reviewing all legal and factual aspects of his case with his lawyer, he was fully satisfied with his lawyer's legal representation and concluded it was in his best interest to enter into the plea agreement and plead guilty rather than proceed to trial because he was, in fact, guilty of the charged offense. The Plea Agreement also contained a non-binding sentence recommendation by the government for 60 months. The Court accepted KASINER's plea of Guilty.

On August 21, 2014, a Presentence Investigation Report (PSR) was filed with the Court under seal. A guideline sentence of five years was determined. The possible sentencing range of five years to life imprisonment was set.

On September 22, 2014, the District Judge conducted a sentencing hearing at which KASINER was sentenced to a term of 66-months imprisonment. Defendant did not appeal the conviction and sentence to the United States Court of Appeals for the Fifth Circuit.

On August 17, 2015, defendant KASINER filed the instant Motion Under 28 U.S.C. §2255, and on October 7, 2015, the government filed their response to defendant's motion to vacate. KASINER filed his reply to the response on November 9, 2015.

The Court determined an evidentiary hearing was necessary to resolve KASINER's claims in his Motion to Vacate. The Court appointed counsel to KASINER for the evidentiary hearing. On December 13, 2016, the Court conducted an evidentiary hearing on the Motion to Vacate.

## II.
## DEFENDANT'S ALLEGATIONS

The Court understands defendant to present two claims in his Motion to Vacate. First, KASINER claims Deputy Simpson violated his Fourth Amendment rights by convincing KASINER he was not free to leave following the issuance of a warning for an improper lane change. Second, KASINER claims he was denied effective assistance of trial counsel because counsel failed to pursue a motion to suppress and incorrectly advised him concerning such a motion.[1]

## III.
## MERITS

When a defendant enters a voluntary guilty plea, all nonjurisdictional defects in the proceedings are waived, including ineffective assistance of counsel, "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Samaniego*, 532 F. App'x 531, 534 (5th Cir. 2013) (citing *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.2000)). To establish that his counsel was constitutionally ineffective, a defendant must show that: "(1) his counsel's performance was deficient to the extent that it fell below an

---

[1] Defendant also claims that suppression of the evidence might be necessary as a result of the legality of the initial traffic stop for an improper lane change.

objective standard of reasonableness, and (2) the deficient performance prejudiced his defense." *United States v. Samaniego*, 532 F. App'x 531, 534 (5th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To establish that his counsel's performance was deficient, a defendant must show that his counsel made errors so serious that he "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. "In order '[t]o prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Cavitt*, 550 F.3d at 441 (quoting *Bond v. Dretke*, 384 F.3d 166, 167–68 (5th Cir.2004)). Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (internal quotation marks omitted).

Defendant KASINER asserts he was denied his constitutional right to effective assistance of counsel because trial counsel failed to pursue a motion to suppress and wrongfully told him such a motion would be unsuccessful if pursued. Defendant's specific argument appears to be that law enforcement had no valid basis to conduct a traffic stop of him and that law enforcement's actions were in violation of the Fourth Amendment protection against unreasonable searches and seizures. Defendant argues the traffic stop was unjustified at its inception because the trooper did not have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or was about to occur. Defendant also takes issue with what he describes as a prolonged detention that occurred after a warning citation was

given. He argues the alleged prolonged detention affected his ability to believe his was free to leave and resulted in his continued detention which he contends was unlawful.

To the extent defendant is attempting to present to this Court the merits of a motion to suppress which defendant waived at the trial court level by acceptance of a guilty plea, the Court notes the two are mutually exclusive. As long as defendant understood his rights, including the right to file a motion to suppress, and knowingly and voluntarily waived those rights in exchange for a plea agreement he cannot now retain the benefit of that plea agreement and litigate the very issue he waived.[2]

The Fifth Circuit, however, has held that "a claim of ineffective assistance based on a failure to file a motion to suppress cannot be reviewed without testimony as to the reasons behind failing to file the motion." *United States v. Maria–Martinez,* 143 F.3d 914, 916 (5th Cir.1998). "The failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison,* 477 U.S. 365, 384 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). The Supreme Court has refined the prejudice inquiry in the context of ineffective-assistance claims based on counsel's failure to file a motion to suppress. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. *Id.* 477 U.S. at 375. The inquiry

---

[2] Although not determinative here, since the undersigned finds any Motion to Suppress would have been denied, KASINER would not be entitled to relief even if the undersigned had determined the Motion to Suppress had merit. It is impossible to state with absolute certainty how a trial judge would rule on a Motion to Suppress or how the Court of Appeals would have decided. The defendant received a very favorable plea offer. It appears the U.S. Attorney was presented with enough of a suppression issue by KASINER's trial counsel to cause the government to make an advantageous plea offer. A defendant is not entitled to accept a benefit, knowingly forgo litigating a Motion to Suppress to receive that benefit, and then challenge the search collaterally.

turns on whether a hypothetical motion to suppress would have been successful. *United States v. Oakley,* 827 F.2d 1023, 1025 (5th Cir.1987).

Prior to his guilty plea, defendant KASINER appeared before the trial court and was admonished about the nature of the charge against him, including the mandatory minimum penalty under the law, his rights, and the consequences of a guilty plea pursuant to an agreement should he choose to enter one. [2:14-CR-040, Dkt. 23]. Defendant did choose to plead guilty and was placed under oath and pleaded guilty. The United States District Court Judge personally addressed defendant, heard his answers under oath, and accepted his plea, finding it to be knowingly and voluntarily made. [*Id.* at 2]. Defendant signed the plea agreement as did his trial counsel at the plea hearing. [2:14-CR-040, Dkt. 25 at 6]. The signed plea agreement states defendant understood his rights to plead not guilty, to have a jury trial, to have his guilt proved beyond a reasonable doubt, to cross-examine and call witnesses, and the right against compelled self-incrimination. [*Id.* at 1]. Defendant further acknowledged he waived these rights and entered a guilty plea to a crime of which he understood the nature and elements. [*Id.* at 1-2]. The plea agreement was supported by a factual resume also signed by defendant. In exchange, the government agreed to make a non-binding sentencing recommendation of 60 months. Although the 66-month sentence imposed was higher than the recommendation, it was still a significantly lower sentence than the defendant would have faced if the government had pursued the charges in the original indictment.[3]

After finding testimony was necessary to determine trial counsel's reasons for failing to file a motion to suppress, and KASINER's understanding of those reasons, and to determine if

---

[3] In hindsight, it appears the better practice would be to include, in the plea agreement, the fact that the defendant was waiving his right to file a Motion to Suppress. That would not prevent a 2255 allegation that counsel's advice to waive was ineffective, but it would have better documented the defendant's decision to not file a motion.

any Fourth Amendment suppression claim would have been meritorious, the Court conducted an evidentiary hearing to resolve KASINER's Motion to Vacate.

KASINER testified at the evidentiary hearing. He claimed he did not commit the traffic violation of an improper lane change. He admitted he gave his brother's name and was dishonest about his past criminal history. KASINER stated he had never been asked to sit in an officer's patrol car, which was the primary reason for his nervousness. KASINER claimed the rental car agreement was in his mother's name because he did not have his own credit card. KASINER claimed he was told he could not leave after he was given his rental agreement back, which was why he answered additional questions.

KASINER stated he met his trial counsel, Ms. Christy Drake, at the preliminary hearing and felt she did a good job at that hearing. KASINER stated he later met with Ms. Drake at the Randall County Jail, but did not see the superseding information until he was back in Court. KASINER understood the benefit of the superseding information would be a sentence guideline of five years, which sounded better to him than the ten (10) to life sentence he faced under the original indictment.

KASINER testified he discussed a Motion to Suppress with Ms. Drake, and Ms. Drake told him she "couldn't walk on water," which he understood to mean she felt he could not successfully challenge the stop or search in a Motion to Suppress. KASINER testified his research after he arrived at prison convinced him the Motion to Suppress would have been successful and if he had been aware of the law at the time of his plea, he would have requested Ms. Drake file a Motion to Suppress. KASINER testified when he received his sentence he thought it was a good deal and had no complaints at the time of sentencing.

Page 8 of 16
HAB55/KASINER-0254.DENY: 4

During cross examination, KASINER testified he declined a request for him to consent to search his vehicle and felt comfortable saying "no" to the officer. KASINER testified he volunteered to provide the key to the safe after the dog alerted to his vehicle, but he was not aware the dog had alerted. KASINER testified he met with Ms. Drake a few times in a holding cell while waiting for Court and twice at the jail. KASINER stated Ms. Drake told him he "had no grounds to stand on" with a Motion to Suppress when he asked her about such a motion. KASINER testified he thought the stop was bad, but didn't understand before his guilty plea about credibility findings regarding the stop. KASINER understood that taking the plea deal would limit his prison time exposure.

After KASINER testified, the Court viewed the DVD of the traffic stop and search. The video did not record the initial traffic violation, but did show it took about two miles before KASINER reacted to the patrol car attempting to stop him. The video shows signs of nervousness on the part of KASINER, including nervous laughter, and revealed KASINER provided his brother's name and gave false information about his criminal history. After giving KASINER a warning and his paperwork back, the officer immediately asked additional questions, including permission to search the vehicle, which KASINER declined. Following the denial of consent, the officer informed KASINER he was going to run the search dog around his car, and KASINER responded "okay." The dog and handler were already present at the scene and there was no delay waiting for a dog and handler to arrive. The video shows KASINER was informed the dog alerted on his car immediately before he was arrested.

Deputy K.C. Simpson also testified at the evidentiary hearing. He was the Potter County officer who conducted the traffic stop of KASINER. Simpson testified KASINER passed a Penske truck and immediately returned to the lane the truck was in, not allowing enough room to

safely merge back into the lane. Simpson testified he activated his lights and followed KASINER for approximately two miles. When KASINER failed to stop after two miles, Simpson testified he called for backup from an Officer Newlun.

Simpson testified to several signs of nervousness exhibited by KASINER after the vehicle was stopped. Simpson indicated KASINER was laughing nervously, breathing heavily, had a rapid heart rate, was looking around nervously, not looking at the officer when answering questions, making nervous hand gestures, and had air freshener in his rental vehicle. Simpson also noted the rental agreement was in someone else's name, the fact it took an unusual amount of time to stop the vehicle, the license plates indicated the vehicle was from California (an originating state for a lot of illegal contraband), and that KASINER would be returning the rental vehicle several days early. Simpson testified he had reasonable suspicion to temporarily detain KASINER long enough to have the drug dog conduct a sniff.

Ms. Drake testified she was court appointed to represent KASINER and represented him at his preliminary examination on April 30, 2015. Ms. Drake testified she met with KASINER on April 28, 2015 at the Randall County jail, before the preliminary examination, to get his version of the facts and to discuss the discovery in the case. On May 9, 2015, Ms. Drake again met with KASINER to discuss the facts. She stated they discussed whether the search was valid because factual guilt was not an issue. On May 23, 2015, Ms. Drake met with KASINER at the Randall County jail. On May 27, 2015, Ms. Drake went to the jail to meet with KASINER and discuss the indictment (2 counts) and to explain the charges and potential penalties. Ms. Drake testified it was apparent KASINER might be a career offender and be in a higher sentencing bracket. Ms. Drake testified she discussed with KASINER the possibility of the government seeking a § 924(c) charge and adding an additional five years to his sentence. Ms. Drake also testified she

discussed the possibility of a Motion to Suppress with KASINER and told him there was a possibility it could be successful, but KASINER risked a very long period of incarceration if he pursued the Motion to Suppress.

Ms. Drake testified she reviewed the remaining discovery when it was received on June 2, 2015, and watched the video of the traffic stop. After watching the video and reviewing the entire discovery, Ms. Drake ultimately believed the Court would find the officer had reasonable suspicion to run the dog and law enforcement would prevail on the initial stop. Based on her many years of experience, Ms. Drake testified she thought KASINER would not prevail on a Motion to Suppress. Ms. Drake testified she received a much better plea offer than expected which reduced the guideline exposure from 292-365 months (without the addition of a § 924(c) charge and with a three level reduction for acceptance) resulting in a guideline range and a government recommendation of 60 months. Ms. Drake testified she obtained this plea offer by addressing Fourth Amendment concerns with the AUSA and discussing the possibility of filing a Motion to Suppress. Ms. Drake testified she never refused to file a Motion to Suppress and would have filed one if asked by KASINER. Ms. Drake testified KASINER seemed very savvy and knowledgeable. Ms. Drake testified she still believes the Motion to Suppress would have been denied and KASINER would have received a minimum sentence of 292 months, most likely with an additional 60 months consecutive for a § 924(c) charge. Ms. Drake testified she gave KASINER a choice about a suppression motion versus the very good plea deal, and KASINER accepted the plea deal.

Ms. Drake also testified to an understanding with the prosecutor that no Motion to Suppress would be filed if KASINER accepted the Plea Agreement. Ms. Drake testified she

Page 11 of 16
HAB55/KASINER-0254.DENY: 4

visited with KASINER at least ten times during his case and discussed all charging documents, plea documents, and sentencing documents thoroughly with KASINER.

KASINER does not claim he told Ms. Drake to file a Motion to Suppress and she refused to do so. Instead, KASINER testified he discussed suppression issues with trial counsel prior to acceptance of the Plea Agreement, but denies understanding the law regarding suppression until after his sentencing.

The Court finds the testimony by Ms. Drake credible and finds KASINER's testimony which onflicts with Ms. Drake not credible. The Court finds trial counsel not only considered, but strategically utilized the possibility of filing a Motion to Suppress to secure an advantageous plea offer.

In the government's reply brief, five factors were listed as issues to be litigated in a Motion to Suppress: (1) whether the officer had legitimate grounds to stop the vehicle; (2) whether, once KASINER's documents were returned to him, the encounter became consensual; (3) whether a reasonable person would have felt free to leave; (4) whether, in any event, the deputies developed reasonable suspicion during the stop that warranted its prolongation without regard to the consensual nature of the encounter; and (5) whether the stop was unreasonably prolonged when a drug dog that was already on the scene was run on the car and alerted to the presence of narcotics. The government contends that if KASINER lost on *any one* of these issues, the Motion to Suppress would have failed. However, if KASINER had won the first issue, it is possible the other issues would not be relevant. If the officer had legitimate grounds to stop the vehicle, then KASINER would have had to win on the other four issues to prevail.

In determining the legality of a traffic stop, the Court reviews the officer's actions in stopping the vehicle and whether those actions were "(1) justified at its inception" and "(2)

reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). In order to justify the traffic stop at its inception, the officer must have reasonable suspicion that illegal activity, like a traffic violation, occurred. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). As the government references, the Texas Transportation Code Sections 542.062(a) and 545.053 govern passing a vehicle and the distance required before moving back into the lane of the passed vehicle. Although the video of the traffic stop did not show the traffic infraction, Officer Simpson testified he observed the defendant merge back into the lane occupied by another vehicle at an unsafe distance and time. No evidence presented at the evidentiary hearing challenged Simpson's credibility on this issue. The only contradiction is KASINER's statement that he did not commit a traffic violation, which is not sufficient for this Court to determine that Deputy Simpson's version of events are untrue. To the extent a fact issue is presented because of any conflict between the testimony of KASINER and Deputy Simpson, the Court finds Deputy Simpson's testimony credible.

As the traffic stop appears justified at its inception, KASINER must show his continued detention was not justified, either through consent or through the development of reasonable suspicion. The Court finds KASINER cannot show a suppression motion would have succeeded based on the evidence presented at the evidentiary hearing. Officer Simpson testified to his training and experience in evaluating the behavior of individuals pulled over for traffic violations and for narcotics violations. Simpson articulated numerous factors giving rise to the development of reasonable suspicion, confirmed by the video recording of the stop. These "specific, articulable facts" and the "reasonable inferences drawn from them" based on the officer's experience and training, constituted reasonable suspicion. *Lopez-Moreno*, 420 F.3d at 433. The

HAB55/KASINER-0254.DENY: 4

facts articulated included: the use of a rental vehicle in another individual's name, the presence of air freshener in a rented vehicle, the length of time it took KASINER to stop, the lack of a valid driver's license provided by KASINER, the inconsistency regarding vehicle rental and return dates, the origin of the vehicle from a known narcotics trafficking route, the nervous behavior of the defendant, and the physical agitation of the defendant when questioned. Additionally, a computer return later showed KASINER had not been truthful about this criminal history (even under the false identity). Combined, these facts gave the officer reasonable suspicion sufficient to detain KASINER long enough to allow the drug dog, already present on the scene, to run the vehicle. Officer Simpson testified the above articulable facts occurred before the final issuance of the warning and he had reasonable suspicion of additional criminal activity prior to completion of the traffic stop.

The Court recognizes these cases of continued detention are very fact specific, as evidenced by the cases cited in the government's reply brief. However, the video and officer testimony at the evidentiary hearing support a finding that sufficient reasonable suspicion existed to warrant a continued detention of KASINER to allow the dog to drug-sniff the vehicle.

KASINER has not shown any Motion to Suppress filed would have been meritorious. Further, his trial counsel's decision to forego filing a Motion to Suppress and face an uncertain outcome, in light of the advantageous plea offer, was more than reasonable. Ms. Drake testified she discussed those facts with KASINER and KASINER then made the decision to proceed with a Plea Agreement as opposed to filing a Motion to Suppress.

IV.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody filed by defendant KARL WESLEY KASINER should be DENIED.

V.
INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 25th day of August 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

HAB55/KASINER-0254.DENY: 4